The next case is Juana Baez et al versus the Town of Brookline et al. Appeal number 21-1278. Attorney Ames, please introduce yourself for the record and proceed with your argument. May it please the court, Brooks Ames for Juana Baez, Cruz Sanabria, Demetrius Oviedo, Rogelio Rodas, and Jose Alberto Nunez Guerrero. May I reserve two minutes for rebuttal? Yes, you may. My clients are a cook, a mother of three Brookline public school students, a public school employee, a Boston public school teacher with a purple heart from Vietnam veteran service, a hospital buyer, and a UPS driver. In the space of a year between November 2014 and October 2015, each of the five faced what they reasonably and credibly saw as abusive and discriminatory treatment by the Brookline police. With the exception of one of them, they were all Brookline residents. In each case where an internal complaint was filed with the Brookline police department, the department cleared itself of wrongdoing. With respect to the- In each case, my clients did not cooperate with the internal affairs officer, but in each case they did, with the exception of one, ask for a hearing before the select board, who are the Brookline's police commissioners. So if you won't cooperate with the town's procedures that they follow for processing complaints, how can you complain about the result of the proceeding? Your honor, the hearing that my client sought was before the police commissioners. They undertook to have a hearing before the select board with the understanding and belief that they would not get a fair shake in the department's internal proceedings. The very first appellant to make a request for a hearing before the select board was Cruz Sanabria, and the period of time in which the town was obligated to hold his hearing expired. At that point, he and the other four appellants filed a lawsuit in the federal court, and it was only after they filed that federal lawsuit that the town started to get into gear and suggest that it would hold a hearing with an outside hearing officer. But at that point, the battle had been joined in federal court. Counsel, let me ask you this. I hope it would be helpful to me to hear your answer, and I hope to my colleagues. Could you give me a sense of how, if you were to get to trial in this case, could you give me an idea how you would try this case? I think that's important to understand, given the multiple plaintiffs here, the very different circumstances that apply. I would like to understand how you would try this case and what theory of liability you would argue to a jury. Can you give us a preview of what that would look like? Yes, Your Honor. To start with the theory of liability, the theory of liability is that the town of Brookline... Five minutes remaining. Five minutes. The theory of liability is the town of Brookline has been deliberately indifferent to complaints of racial discrimination. And so at the outset of a trial, there would have to be testimony about the history, the long history of complaints of racial discrimination and the town's response to those complaints, which was inadequate. After that sort of backdrop is laid out, the jury would have to hear the individual cases and make a determination as to whether in each of those cases my client's rights had been violated in those particular cases. Violated in what sense? Violated in the sense that their right not to be discriminated against on the basis of race by the police had been violated. So you would have to prove in every instance that the treatment described was the result of purposeful discrimination by that to draw the inference that the reason the officer acted as they did was because of some racial animus. Yes, Your Honor. Let me just give you go to one of the plaintiffs. I know there's, I forget her name, but it's the woman who's with a child in her arms. There's another three-year-old child in the apartment. That is referred to, I think, social services. How would you prove that under same question of Judge Lopez? Your Honor, in that case, the client's name is Juana Baez, and in that case, Ms. Baez was not doing anything wrong, but she was charged with disorderly conduct. In the course of the police interaction with her, they told her that if she continued to speak and try to inform them as to what had happened in the incident preceding the police arrival, she would be arrested. They told her that she had to produce a passport. So the fact that they would tell her that she had to produce a passport creates an inference that they're saying she's not from here, and it suggests that there's an animus there against somebody who's Hispanic because there would be no reason for them to assume anything about her and make that statement. They also, in the same incident, they said that her partner, one of the officers said her partner would be arrested if he continued to speak Spanish. So these are indicia that a jury could take as evidence that there's a racial animus. In addition, in the case of Ms. Baez, there was reports from her partner to the police that the tow truck driver that they were having a dispute with had assaulted her, essentially, by trying to open the door of his tow truck right into her as she's holding an infant child in her hand. Yet the police, when they arrive at the scene, have no interest in pursuing that aspect of the controversy. They just immediately focus on Ms. Baez and her partner and overreacted. And the jury could draw an inference from the way the two parties were treated there, the tow truck driver being white, Ms. Baez and her partner being Hispanic, that the police had a favoritism towards the white tow truck driver and an animus towards Ms. Baez and her partner based solely on the fact that they were Hispanic. And the partner is the one who got on top of the tow truck, am I correct? Yes, the partner did get on the tow truck and he made the initial call to the police and remained on the line with the police communicating what was happening until they arrived. And when the police arrived, they immediately handcuffed him, which was, again, an overreaction. And I think a instance could have been tied to some animus towards Mr. Jose Alberto Nunez-Guerrero because he was Hispanic. Let me ask you just one final, it's a procedural follow-up question. I don't see that you ever deposed the particular police officers. Was that just a strategic decision or why weren't they deposed? For the purpose of the summary judgment record, that's not there. In the case of the police officers, there was an internal investigation that took their statements. And of course, in many instances, they wrote police reports about the incident. So there was an ample record of what their stories were going to be. So given that we had to make a case going back some ways in terms of showing that there was a pattern of ignoring these complaints, we focused the discovery on that. Thank you. Thank you. Either of my colleagues have any more questions? No, thank you. Mr. Ames, I believe you reserved two minutes for regard. Yes, thank you, Your Honor. Thank you. Mr. Ames, please mute your audio and video at this time. And Attorney Podolsky, please unmute your audio and video at this time and introduce yourself on the record to begin. Good morning, Your Honors. Joseph Podolsky for the Appalachia Town of Brookline. Your Honors, I didn't intend on discussing this this morning with my limited time, but there is a framework disagreement. And Judge Lopez, I think that your question gets to that issue. First, count one is a claim against the Town of Brookline. It's the only remaining claim. It's an equal protection claim under the 14th Amendment. The way that the appellants frame that before this court is completely different than the way that it was framed in the district court and the way that it was litigated through to summary judgment. Appendix page 49 is the specific page reference to the complaint allegation where that count was framed. And that count was framed as an allegation that the Town of Brookline violated the equal protection clause by, quote, targeting Black and Hispanic people for unwarranted criminal charges, criminal investigations, and threats of criminal charges. That was the way that the claim was framed. Now, what we're hearing is that the appellants are claiming their claim is based upon the citizen's complaint review process and the Town's failure to comply with the equal protection clause as a result of allegations relative to that process. That change is impermissible. Either way, the remaining claim is the equal protection claim. And the framework is important and the appellants have it backwards. What they were required to prove in the first instance is an underlying constitutional violation. So, if the case were to theoretically go to trial, they would first have to prove an underlying violation occurred. And that's from Wilson versus the Town of Mendon. The appellants cite this case and say, well, we weren't required to name the officers in the case. True, but it doesn't alleviate them of the obligation to prove an underlying violation. And Wilson speaks to that, so does Monell, so does a number of cases. On this framework, let me ask you this. They have, and I think appellant acknowledges, they have these individual instances and they would attempt to prove that in one, two, maybe all of them, that the officers involved were culpable for intentional racial discrimination in the way that they dealt with those individuals. That would be the constitutional tort that they would have to establish. And then they would, then in addition, they would have to say for purposes of Monell liability, that the town was in some way responsible for those specific constitutional torts. Their theory seems to be one of a mix of deliberate indifference and improper training and supervision. And they, as they would have to, they have to acknowledge that the town has gone to some lengths to try to reform the complaint procedure. They've consulted outside experts as to how to do it, but their theory is that's all a sham. It looks good, but in practice, no officer is ever held accountable. This internal investigation is compromised from the beginning. And so in that sense, the town is deliberately indifference to this pattern of individual constitutional torts that we've established. Now, why shouldn't they be able to take that claim to a jury? They didn't prove that claim, your honor. They didn't prove that claim in the lower court. Five minutes remaining. Your honor. So the claim was... Their argument is we should be, we should have an opportunity to prove that claim to a fact finder. There are lots of disputed facts here. We have our version of what happened in those individual instances. The town has its version. Let the jury sort it out. And then if we can establish these individual torts, let us argue that what happened here reflects a pattern, a policy of deliberate indifference on the part of the town. Why shouldn't they be able to take that to a jury? They were obligated to prove that in discovery in the case and present that as a threshold showing to get past summary judgment. And they didn't do that. And what they were required to show was that the appellants compared with others similarly situated were selectively treated. And that such selective treatment was based on impermissible considerations, such as race. Each appellant had that obligation, that burden, and they rested on their conclusory allegations. They didn't do any discovery, as you've heard my brother say to you a moment ago, on these individual instances. They made the allegations and they rested on the allegations. They said that was enough. We looked at the police reports. We chose not to depose the officers because we were going to focus on this record or this history that they claim exists, except none of the officers had any history whatsoever of engaging in any similar type constitutional violation. So that's one way of proving it. Another is pull the officer-specific arrest record, pull the officer-specific summons record, compare it to this particular situation, show that this particular officer for this appellant does actually enforce the law selectively and for impermissible reasons. They didn't do that. That was their underlying obligation on that threshold showing that there was a constitutional violation. But because the claim is only brought against the town, there was an additional layer of proof that was required that they wholly failed to make. They just ignored. That's the Monell elements, that they had to prove the unconstitutional customer practice, that the customer practice was such that it demonstrated deliberate indifference to the rights of the specific appellants, and that that customer practice was the direct cause of the underlying constitutional violation. And that direct cause part of the case is part and parcel of where these evidentiary failures come in or came in at summary judgment. That direct cause aspect is to show that these officers had a propensity, and that propensity was caused by actions or inactions on the part of the town. And that was the reason or part of the cause for their actions to violate the appellant's constitutional rights in each of these five cases. They didn't engage in any of that discovery. They filed their claim, they made allegations, and they rested on those conclusions, all the while engaging in discovery as it relates to the entire department, which in all of that discovery, the appellants point to two officers, none of whom are involved in this particular case. And that discovery otherwise revealed, and I just want to check that the Brookline Police Department has been taking steps to eradicate racial profiling in policing, race bias in policing. And that gets to prongs one and two of the specific claim analysis in this case. Was there a customer practice that was caused by the town? So 1987, you have that. Yes. Yes. Let me see if there are any questions for you here. I'm fine. Thank you. Why don't you just wrap up with a sentence or two? Thank you, Your Honor. So I won't go through bullet point by bullet point each of the many things that the Chief O'Leary did as a goal when he took office in 1987. But one of two goals as he testified of his when he became chief was to address community relations and specifically community relations with people who are members of minority classification. That was the goal of the Department of the Chief. And the record shows that that has been taking place for the last 30 years in ways that really no other department in this state does. It's certainly not an equal protection customer policy case. Thank you. Thank you, Your Honor. Attorney Podolsky at this time, if you would mute your audio and your video. And Attorney Ames, if you would unmute your audio and video, and you can begin your two minute rebuttal by reintroducing yourself on the record. May it please the court, Brooks Ames for the appellants. Let me take up a... I hope you'll use your rebuttal time, at least part of it, to respond to opposing counsel's itemization of all the deficiencies in the summary judgment record, which justified the district court's decision. And following up on Judge Lopez's statement, pinpoint exactly in the record where you have evidence that creates issues of material fact as to Monell liability on the town of Brooklyn. So let me see if I can take those up. Counsel stated that no discovery was done with regards to the officers in question. That's not accurate. We did obtain personnel records. And as to two of the incidents that are alleged in the complaint, two of the five, the officer, the supervising officer in question did have a prior racial discrimination complaint against him. And that's in the sealed appendix. One was severe enough that the officer was suspended for five days, although that was later changed. But they were complaints of racial discrimination that had preceded the incidents that we alleged. With regards to how the proof, what the proof needs to be, the case of Alexis versus McDonald, First Circuit case, seems to me that you don't necessarily have to go finding a pattern of historical discrimination by the officer in question. You can rely on the incident itself. The incident itself can give rise to an inference of discrimination. In that case, it was the fact that the officer arrested a black woman in McDonald's for very minor offense. And the court determined that the escalation by the officer of a minor offense into an arrest could create an inference. So that's what we're relying on in many of these incidents, is that overreaction, that escalation by the officer, and the fact that the officer is treating in an incident that involves a number of parties, treating the minority parties worse than the white parties. With regards to the Monell claim and the evidence of the Monell claim, the evidence of the Monell claim is the fact that repeatedly the racial discrimination complaints that are rejected by the internal affairs process do get appealed up to the select board. And in every instance, the select board have not heard those appeals. And there was a series of reviews done by the town. The town assigned reviewers to review their process, and they found that the process was not being followed, that the select board was not hearing complaints as they should. So that's an example of where the select board knows these complaints are being made, yet they are deliberately turning a blind eye to them by refusing to hear them, refusing to listen to the evidence and make a judgment as to whether or not there's been discrimination. So that's the meat of the Monell claim, and it's evidenced in part by a case study that I went through in the brief where there's a detective Wagner who ends up having three complaints against him for racial discrimination. And the last one culminates in the town having to pay somebody $157,000 because of the allegations against Detective Wagner that he's been racially discriminating as he goes out in the field and detains people. And in that case, there had been three times, there were three times, including the last time, where the internal affairs officer completely exonerates Wagner of any offense. So you see in that sort of case study that the internal affairs procedure is not accomplishing what it should be doing, which is to weed out somebody like Detective Wagner. And with regards to how that affects other officers, the argument that's been made by a lot of the district courts in Massachusetts admittedly in the context of one officer to engage in excessive force without disciplining them, you are emboldening all officers to engage in that activity. And our theory here is that because there's 30 years of failing to put a stop to this racial discrimination, all officers are emboldened, entitled to engage in this sort of behavior. Thank you. Thank you, Attorney Ames. At this time, I would like to ask the court, are we ready to move on to the next case with these same attorneys? Yes, please. Okay, so that concludes argument in this case. Attorney Ames and Attorney Podolsky should not disconnect, they should stay in.